UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

EVERGREEN FAMILY HEALTH PARTNERS, LLP,

Plaintiff,

v.

BANK OF BURLINGTON, INC.,

Defendant.

Case No. 2:25-cv-363

**OPINION AND ORDER**

Before the Court is Evergreen Family Health Partners, LLP's ("Evergreen"'s) motion to dismiss the Bank of Burlington, Inc.'s (the "Bank"'s) counterclaims. ECF No. 30. For the reasons set forth below, the Court denies the motion.

## I. Background

Evergreen brought this case against the Bank after Evergreen lost over a quarter of a million dollars from its account at the Bank to an unauthorized individual. *See generally* ECF No. 25. After this Court ruled on the Bank's motion to dismiss, Evergreen's remaining claims against the Bank include breach of contract, deceptive acts or practices, and breach of the Uniform Commercial Code. *See* ECF No. 23 at 28.

The Bank filed its answer along with two counterclaims: (1) a claim for an express right to indemnity; and (2) a claim for

breach of contract. ECF No. 26. In its counterclaims, the Bank alleges that in opening a commercial checking account with the Bank, Evergreen entered into a binding contract with the Bank that "was comprised of terms contained primarily in the Treasury Management Services Agreement".[1] ECF No. 26 at 8.

Under Count I, the Bank alleges that the TMSA provides that Evergreen shall indemnify the Bank with respect to any "unauthorized, altered, counterfeit, or to other fraudulent transactions occurring in your Accounts that the product or service was designed to detect of deter" as well as for:

> [A]ll actions, causes of action, claims, damages, liabilities and expenses (including reasonable attorney's fees) of any nature or kind… arising out of, or related to, this Agreement, including all actions… related to or resulting from … (iii) your failure to maintain compliance with this Agreement, and all applicable laws and regulations; or (iv) Bank's provisions of the Services, or action or inaction in accordance with, or in reliance upon, any instructions or information received from Customer (or any persona reasonably believed to be you or authorized to act on your behalf);….

ECF No. 26 at 14. The Bank alleges that, because the "fraudulent activity and resulting losses were only made possible because Evergreen declined a Dual-Control environment for its external transfers to linked accounts," Evergreen must indemnify the Bank.

---

[1] Hereinafter "TMSA".

Under Count II, the Bank alleges that Evergreen breached its contractual obligations under the TMSA by failing to maintain and secure its login credentials, by failing to immediately notify the Bank of any suspected unauthorized transaction or illicit activity, and—after these actions—by then bringing causes of action against the Bank.

## II. **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2).[2] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

[2] In its opposition to the motion to dismiss its counterclaims, the Bank refers multiple times to "Vermont's pleading standard" and states that the standard for notice-pleading in Vermont is exceedingly low, such that its claims easily meet the standard. *See* ECF No. 33 at 6, 8. At the same time, however, the Bank references the federal pleading standard; accordingly, it is not clear what standard the Bank argues that this Court should use to decide this motion to dismiss. To clarify: to the extent the Bank is arguing that a pleading standard other than the federal standard set out in *Iqbal*, *Twombly*, and Rule 8 applies here, the Bank's argument must fail. *See, e.g.*, *MacIntyre v. Moore*, 335 F. Supp. 3d 402, 413 (W.D.N.Y. 2018) ("Federal courts sitting in diversity or exercising supplemental jurisdiction apply state substantive law and federal procedural law."). The Court applies the federal standard.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The Court must draw all reasonable inferences in favor of the non-moving party, but need not accept conclusory statements. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016).

In considering the plausibility of a claim on a motion to dismiss, the court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *Santos v. Kimmel*, 154 F.4th 30, 33 (2d Cir. 2025), as well as documents upon which the complaint heavily relies and which are therefore integral to the complaint. *See Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025).

## III. <u>Analysis</u>

### A. Consideration of External Documents

A threshold issue in this case is whether the Court, when considering Evergreen's motion to dismiss, is confined to examining the TMSA—or whether the Court may analyze the TMSA in conjunction with the Account Agreement even though the Bank only mentioned the TMSA in its counterclaims. Evergreen argues that the TMSA conflicts with the Account Agreement, and that the Account Agreement "supersedes" the TMSA such that the Bank's counterclaims must fail. *See* ECF No. 30 at 8-16. The Bank insists that the Court may only consider the TMSA at the motion to dismiss stage. *See* ECF No. 33 at 9 ("In the Counterclaim, the Defendant alleges that there was one contract, the TMSA, and

that contract is the 'full and complete agreement' between the parties and 'supersedes any other agreements expressed or implied.' Countercl. ¶ 7. These allegations, when viewed in the light most favorable to the Defendant, it is [sic] beyond doubt that there exists one valid contract between the parties, that the contract is the TMSA, and that the TMSA 'supersedes' any other implied or express agreements.").

As explained above, the Bank is generally correct that, when determining the plausibility of a claim on a motion to dismiss, the court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *Santos v. Kimmel*, 154 F.4th at 33, as well as documents upon which the complaint heavily relies and which are therefore integral to the complaint. *See Pearson*, 125 F.4th at 406. However, a party cannot defeat a Rule 12(b)(6) motion simply by cherry-picking "helpful" documents to cite in the complaint, while deliberately ignoring other relevant documents that might tend to undercut their claims. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419. 422 (2d Cir. 2011) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion"); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (plaintiff may not

"evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit"); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991).

Here, as Evergreen points out, the Bank's answer to the amended complaint admits that "among the executed contractual documents between Evergreen and the Bank were an 'Account Agreement' and a 'Treasury Management Services Agreement.'" ECF No. 25 at 13; ECF No. 26 at 5. The existence of the Account Agreement, then, is not disputed by the Bank. To the extent that the Bank has notice of and is aware of the Account Agreement and has only left reference of the Account Agreement out of its counterclaims so that it could survive a motion to dismiss, the Court finds that such an attempt to evade Rule 12(b)(6) dismissal falls short.

**B. Contract Interpretation**

Having determined that the existence of the Account Agreement may be considered at this stage, the Court next turns to Evergreen's argument that the Account Agreement's terms should control over those of the TMSA. Evergreen argues that: (1) if the TMSA and the Account Agreement are construed as separate, independent agreements, then the Account Agreement controls over the TMSA because it is later-signed and has more specific terms; and, (2) alternatively, if the TMSA and Account

Agreement are construed as one contract, then the Account Agreement's lack of indemnity and the fact that drafting ambiguities are resolved against the drafting party also means that the Account Agreement's terms control. *See* ECF No. 30 at 5-6.

The Court finds that this argument is premature. Although the Bank overstated its position to the extent that it implies that the Account Agreement may not exist, ultimately, Evergreen bases its arguments upon its own theory of the case. For example, Evergreen claims that: "[t]he Bank's Counterclaims fail because Evergreen did not clearly/unmistakably intend to indemnify the Bank for the Bank's contractual breaches and deceptive marketing representations." ECF No. 30 at 14. Put simply, Evergreen argues that it has sued the Bank because the Bank breached the contract and had deceptive marketing representations; however, the Bank's theory of the case is that:

> The thief was able to steal funds from Evergreen's account because (1) Evergreen allowed its email to be hijacked, (2) Evergreen failed to take any measures to secure its account throughout the period of illicit activity described above, (3) Evergreen failed to immediately notify the Bank of suspected illicit activity, and, most prominently, (4) Evergreen declined the Dual-Control Security measure which would have prevented the thief's unilateral control over initiating external transfers, and which would have prevented the theft from occurring.

ECF No. 26 at 13. The parties may each undertake discovery to gather evidence in support of their claims.

Evergreen insists that there is a contractual ambiguity between the TMSA, which states that Evergreen must indemnify the Bank, and the Account Agreement, which limits liability for unauthorized EFTS. *See* ECF No. 30 at 10-11. Evergreen asks the Court to resolve the ambiguities and interpret the conflicting contracts as a matter of law. Evergreen argues that the Bank cannot be correct that the TMSA is the primary or superseding contract, when the Account Agreement was executed later, was longer, contains more specific information, and required more signatures. *Id.* Evergreen makes fair points, and the Bank does not respond to any of them.[3] Still, where the Bank has alleged that the TMSA is the primary agreement, and where some of Evergreen's arguments—for example, whether the contracts should be considered to be executed at the same or different times—may be disputed by the Bank, the Court will deny the motion to dismiss on this issue. The parties may address it at summary judgment.

**C. Vermont's Consumer Protection Statute**

Evergreen's final argument questions whether the Bank may recover any attorney's fees in this case.[4] Vermont follows the

---

[3] The Bank only argues that the Court must ignore the Account Agreement.

[4] The Bank asks for "damages and reasonable attorney's fees" for its breach of contract claim, but does not elaborate upon what its damages could be other than attorney's fees. *See* ECF No. 26 at 15.

"American Rule" of attorney's fees, under which parties to litigation are generally responsible for their own fees in the absence of a statute or contractual agreement to the contrary. *See Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 76. Evergreen argues that the contractual indemnity provision in the TMSA runs counter to the Vermont Consumer Protection Law ("VCPL"). Specifically, Evergreen cites to a provision within the statute that it refers to as the "statutory fee shifting provision":

> Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title, may sue for appropriate equitable relief and may sue and recover from the seller, solicitor, or other violator the amount of his or her damages, or the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages… Any language, written or oral, used by a seller or solicitor, that attempts to exclude or modify recovery of the penalty or reasonable attorney's fees shall be unenforceable.

9 V.S.A. § 2461(b).[5] According to Evergreen, the TMSA's indemnity provisions "undercut" the Vermont legislature's intent under the VCPL, because the indemnification provisions would

[5] The Vermont Supreme Court has held that: "Where a court finds that the Consumer Fraud Act has been violated, it is not within the court's discretion to determine whether to award fees, but rather its task is to determine what constitutes reasonable fees in each instance." *L'Esperance v. Benware*, 2003 VT 43, ¶ 21 (citation omitted); *see also McKinstry v. Fecteau Residential Homes, Inc.*, 2015 VT 125, ¶ 13.

make Evergreen liable for the Bank's attorney's fees and yet the VCPL allows for the plaintiff to sue for reasonable attorney's fees and makes unenforceable "any language… used by a seller or solicitor, that attempts to exclude or modify recovery of the penalty or reasonable attorney's fees."

The Bank responds that the "language of the statute merely provides a right of action to a consumer, and if, following a decision on the merits, the consumer is able to recover from that right, *then* any indemnity clause which *modifies recovery of the penalty imposed* will be unenforceable." ECF No. 33 at 12. The Bank points out that at this early stage of the case Evergreen's allegations have not been proven. Evergreen responds in turn that the fee-shifting provision in the VCPL is a "one-way" fee shifting provision, and argues that a respondent to suit under the provision may not seek attorney's fees through contractual provisions even if they prevail.

In sum, both parties agree that, should Evergreen prevail on its allegations, then the Bank is not entitled to attorney's fees and its counterclaims must fail. The issue the parties dispute is whether or not the Bank has a plausible claim, where its damages are attorney's fees, under a theory in which the Bank did not violate the VCPL.

To support its argument, Evergreen cites to *Rosetti v. Bare, Ltd.*, Case No. 21-CV-00298, at *4-6 (Vt. Super. Ct. Apr.

24, 2025). In that employment case, there were multiple claims at issue: the plaintiff claimed that she was underpaid bonuses due to her in 2018 and 2019, and that her employer failed to pay her bonus and unused PTO for 2020. The case went to trial, plaintiff partially prevailed but then the trial court granted the defendants' Rule 50 motion, and after trial defendants sought attorney's fees under the employment contract, though 21 V.S.A. § 347 provides for "all costs and reasonable attorney's fees" when an employer violates certain provisions of the statute. The Vermont state court found that: "unless the suit is brought in bad faith, to allow a contractual provision to shift the attorney's fee burden onto the [claimant's] shoulders would frustrate [the legislature's] policy determination." *Id.* at *6. In making this finding, the Superior Court relied on the reasoning in a decision by the California Court of Appeal, *Dane-Elec Corp., USA v. Bodokh*, 35 Cal. App. 5th 761, 248 Cal. Rptr. 3d 163, 172 (Ct. App. 2019). Defendants appealed to the Vermont Supreme Court.[6]

In its opinion, the Vermont Supreme Court noted that: "Defendants appear to agree that, like the California wage statute, the unilateral fee shifting provision in 21 V.S.A.

[6] When drafting their pleadings the parties did not have the benefit of the Vermont Supreme Court opinion, which was issued after the briefing for the motion in this Court was complete.

§ 347 is intended to ensure that only prevailing plaintiffs receive fees in wage actions, and thus prevents defendants from recovering fees for defending plaintiff's 2018 and 2019 wage claims even though they were the substantially prevailing parties on those claims." *Rossetti v. Bare, Ltd.*, 2026 VT 28, ¶ 42. Accordingly, the Supreme Court focused on the 2020 implied covenant claim, which involved "a separate legal theory and separate proof from the wage claims." *Id.*

The Vermont Supreme Court first reasoned that "[i]n Vermont, parties are required to bear their own costs of litigation unless otherwise provided by contract or statute," and that "an award of attorney's fees is proper where a contract makes such provisions;" in fact, "when a contract provides for attorney's fees, Vermont courts are loathe to revise the agreement struck by the parties and deny them the benefit of their bargain." *Id.* at ¶ 43 (internal citations and quotation marks omitted). The Supreme Court then observed the 2018 and 2019 claims were litigated on different legal theories than the 2020 claims—the 2018 and 2019 claims were claims for wages within the meaning of 21 V.S.A. § 341, whereas the 2020 claim involved breach of the implied covenant of good faith and fair dealing. *Id.* at ¶ 44. The Court held that, where the "facts and law of plaintiff's 2020 claim" was not "inextricably intertwined" with the wage claims, § 347 did not prohibit

attorney's fees from being awarded to defendants on that claim and thus: "assuming defendants can establish which fees they incurred exclusively in defending the nonwage claims, they are theoretically entitled to recovery under the contract as the substantially prevailing parties." *Id.*

To summarize, the Vermont Supreme Court in *Rosetti* assumed, without directly deciding, that under a unilateral fee shifting provision defendants could not recover attorney's fees even where they substantially prevailed on those claims. However, the Vermont Supreme Court did allow that defendants could theoretically recover as prevailing parties on other claims that were not "inextricably intertwined" with the wage claims that were subject to the fee shifting provision. Other, similar cases have allowed both sides to recover fees. *See, e.g., Kwon v. Eaton*, 2010 VT 73 (affirming Chittenden Superior Court's decision to award attorney's fees to tenants as well as attorney's fees to landlords, even though landlords recovered a net judgment). In Vermont, whether both parties may recover attorney's fees or whether the claims are inextricably intertwined can be a matter of discretion that depends upon the circumstances of the case:

> Courts are frequently called upon to consider statutory attorney's fee awards in cases involving multiple claims, some of which are subject to a fee-shifting statute, and some of which are not. As we have recognized, it is frequently impossible to parse out,

> claim-by-claim, legal services rendered in cases involving a common core of facts… Accordingly, the trial court has the discretion to focus on the significance of the plaintiff's overall results in relation to the work reasonably performed in cases where the plaintiff's claims contained a common core of facts or were based on legal theories… On the other hand, sometimes the respective claims in a case are so distinct that a court cannot reasonably conclude that they arise from a common core of facts.

*Post & Beam Equities Group, LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶¶48-49 (internal quotation marks and citations omitted). At this early stage in the case, the Court finds that it is plausible that the Bank could recover some attorney's fees. The Court will allow the parties to develop their factual narratives in discovery. Of course, it may be the case that Evergreen proves its case and is fully awarded attorney's fees. *See, e.g., L'Esperance v. Benware*, 2003 VT 43, ¶¶ 20-25 (affirming plaintiff's award of attorney's fees under the Consumer Fraud Act for *all* claims, where they arose out of a common of core facts and the lower court had concluded that "plaintiffs' lawsuit is not one which can be viewed as a series of discrete claims so that the hours expended can be divided on a claim-by-claim basis."). But, as a matter of law, accepting all factual allegations in favor of the Bank, the Bank has stated a claim for relief that is plausible on its face.[7]

---

[7] This case is in a unique procedural posture because the Bank has asserted attorney's fees as its only form of damages, and Evergreen has moved to dismiss the Bank's counterclaims. The

## IV. Conclusion

For the reasons set forth above, the Court DENIES the motion to dismiss the counterclaims (ECF No. 30).

DATED at Burlington, in the District of Vermont, this 24th day of August 2026.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

Vermont cases cited to by the parties all address attorney fees awarded much later in the case, often after trial.